Opinion issued December 11, 2025



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00224-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**MARTHA GLADIS MORAN MICHACA, Appellee**

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2020-28227

## MEMORANDUM OPINION

This appeal arises from a motor-vehicle collision involving an on-duty Houston Police Department officer and appellee Martha Gladis Moran Michaca ("Moran"). Appellant City of Houston moved for summary judgment asserting governmental immunity from suit under the Texas Tort Claims Act. The trial court

denied the motion. In two issues on appeal, the City contends that the trial court erred by denying summary judgment because: (1) the TTCA's emergency exception applied to retain the City's governmental immunity; and (2) the City alternatively retained its immunity based on the officer's official immunity.

We hold that genuine issues of material fact prevented summary judgment. Accordingly, we affirm.

## Background

In May 2018, HPD Officer Horace James Scott was involved in a motor-vehicle collision with Moran at an intersection. Scott and several other officers were allegedly pursuing a fleeing aggravated robbery suspect in a stolen car without license plates. The suspect ran the red light at the intersection, and Scott followed him through the red light. Moran had a green light, and Scott's vehicle collided with Moran's vehicle.

Earlier in the day, the suspect had reportedly assaulted a woman and stolen her vehicle at gunpoint. Although the stolen vehicle did not have license plates, officers found it parked at a parole office. Officers did not know the identity of the suspect, so they waited nearby for him to return to the stolen vehicle. The suspect eventually approached the vehicle, opened it with a key, and drove off. He evaded officers as they attempted a traffic stop. A police chase ensued.

Officer Scott was the primary unit chasing the suspect. Four other officers followed in three separate police cars. All four police cars had their emergency lights and sirens activated during the pursuit. The officers eventually followed the suspect onto the Highway 59 service road. As the vehicles approached the intersection with Crosstimbers Street, the suspect drove through the red light at the intersection and continued straight on the service road. Scott decided to run the red light to continue the pursuit.

Meanwhile, Moran was stopped on Crosstimbers at the same intersection. After her light turned green, she stopped briefly as the suspect ran the red light and drove through the intersection. She began driving forward after the suspect's vehicle cleared the intersection and just as Scott was entering it. The two vehicles collided.

Scott and another pursing officer remained at the intersection after the collision. Both Scott and Moran were treated by emergency medical personnel, and Moran was taken to the hospital. The other officers continued the chase and ultimately caught the suspect.

Moran filed suit against the City and asserted claims of negligence and negligence per se.[1] She also alleged that the TTCA waived the City's governmental immunity.

---

[1] Moran also sued Scott, but her claims against him were dismissed on the City's motion. Scott is not a party to this appeal.

The City filed a motion for summary judgment asserting its governmental immunity from suit on two grounds. First, the City argued that Scott was entitled to official immunity because he was acting in good faith and within the course and scope of his discretionary authority as a police officer when the collision occurred. The City asserted that Scott was engaged in a priority 1 pursuit of an unknown aggravated robbery suspect who was evading arrest in a stolen vehicle without license plates. The City argued that although Scott ran a red light at the intersection, the risk to the public in doing so was low because Scott had activated the emergency lights and siren on his vehicle, and he believed Moran's vehicle was yielding to his police car. Thus, a reasonably prudent officer acting under similar circumstances could have believed that Scott's actions were justified based on his perception of the facts as they then existed.

Second, the City argued that it retained its governmental immunity under the TTCA's emergency exception. The City argued that Scott was responding to an emergency call or reacting to an emergency situation, he complied with the laws applicable to emergency vehicles in Transportation Code Chapter 546, and he did not act with conscious indifference or reckless disregard for the safety of others.

The City attached several exhibits to its motion, including numerous photographs taken from body camera recordings of the chase and the subsequent

4

crash. In attached deposition excerpts, Moran testified that she did not see the emergency lights or hear the sirens on Scott's car before the collision.

The City also attached a Texas Peace Officer's Crash Report regarding the collision. The report contained a statement from Scott that he "braked and cleared the left and saw [that Moran's] truck at the intersection was stopping for the suspect's vehicle" to pass through the intersection. He "then saw the truck slowly moving then stopped," so "he assumed that the truck was yielding for him." As he "went through the intersection[,] the other car was moving forward slowly and we collided." The report also contained a statement from Moran that she "saw a car going through the intersection very fast" after her "light [had] just turned green." She then "went through the intersection [and] got hit" by another vehicle. The report concluded that Scott "failed to use due caution and struck [Moran's vehicle]." The crash investigator stated that he had reviewed Scott's body camera, which "showed Officer [Scott] did not slow down and clear the intersection."

In an HPD crash questionnaire, Scott stated that he "was braking heavily to slow down as [he] approached the intersection." He looked both ways and saw that other vehicles were stopping, but he saw Moran's vehicle "start to pull off from a stop then stop again leading [Scott] to believe [that Moran] was yielding to [Scott's] emergency vehicle." Scott estimated his speed at between 40 and 50 miles per hour when the crash occurred.

5

Finally, the City attached an unsworn declaration by Scott and affidavits by the four other officers involved in the chase of the robbery suspect. Scott described learning about the aggravated robbery, finding the stolen vehicle in the parking lot of the parole office, beginning the pursuit of the suspect, and following the suspect through the red light at the intersection immediately before the collision occurred. He stated that before running the red light, he slowed down, looked both ways, and saw that Moran's vehicle was stopped after initially driving forward. Scott stated that a reasonably prudent officer, acting under similar circumstances, could have believed that the need to catch the suspect outweighed "any minimal risk" to the public in continuing the pursuit. The other pursuing officers' affidavits were substantially similar to Scott's declaration.

Moran filed a response that primarily focused on the crash report's conclusions that Scott "failed to use due caution" and that his body camera showed he "did not slow down and clear the intersection" before driving through the red light. Moran also relied on a letter from HPD, which she attached to her response, suspending Scott for three days due to his actions during the chase and collision. HPD concluded that Scott had violated HPD rules and regulations regarding traffic laws. The letter also concluded that Scott had violated several traffic laws applicable to emergency vehicles in Transportation Code sections 546.001 and 546.005. Moran thus argued that fact issues existed on whether Scott acted in good faith as required

for official immunity to apply. She further argued that fact issues existed on whether Scott complied with laws applicable to emergency action as required to apply the emergency exception to the TTCA's waiver of immunity.

The City filed a reply but did not directly address whether the crash report and the HPD letter raised fact issues.[2] After a short hearing, the trial court signed an amended order denying the City's summary judgment motion. This appeal followed.

## Governmental Immunity

In two issues on appeal, the City argues that the trial court erred by denying its summary judgment motion because it was entitled to governmental immunity on two grounds: (1) the Tort Claims Act's emergency exception; and (2) Officer Scott's official immunity.

## A. Standard of Review

A plaintiff has the burden to show the trial court's subject-matter jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). That burden includes an obligation to show a waiver of sovereign or governmental immunity in suits against the State and its political subdivisions, including cities. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see also Ben Bolt-Palito*

---

[2] Both parties objected to the other party's summary judgment evidence. The trial court did not rule on the objections. But at the summary judgment hearing, the trial court stated that it did not consider Moran's full deposition transcript, which Moran had generally relied on in her response.

*Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) (stating that governmental immunity extends to political subdivisions of State, such as counties, cities, and school districts). A governmental unit may raise an immunity defense in a summary judgment motion challenging the trial court's jurisdiction. *Town of Shady Shores*, 590 S.W.3d at 551; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

We review a trial court's summary judgment ruling de novo. *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017). To obtain summary judgment on traditional grounds, the movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

When a governmental defendant moves for traditional summary judgment on the jurisdictional ground of immunity, it "carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)). Likewise, a defendant who moves for summary judgment on an affirmative defense must conclusively establish each element of the defense. *City of Houston v. Nicolai*, 695 S.W.3d 489, 494 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (en banc) (op. on reh'g). Evidence is conclusive only if reasonable people could not differ in their

8

conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Nicolai*, 695 S.W.3d at 494. Once the defendant establishes that it is entitled to summary judgment, the burden shifts to the plaintiff to produce evidence raising a fact issue concerning a waiver of immunity. *See Powell*, 704 S.W.3d at 448; *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 637 ("While a plaintiff must plead the elements of her statutory cause of action . . . she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts.").

In reviewing a summary judgment ruling, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Powell*, 704 S.W.3d at 448 (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022)); *City of Houston v. Branch*, 695 S.W.3d 580, 586–87 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (en banc) (op. on reh'g). We may not, however, disregard necessary contextual evidence or "evidence and inferences unfavorable to the [nonmovants] if reasonable jurors could not." *City of Houston v. Rodriguez*, 704 S.W.3d 462, 470 (Tex. 2024) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018)); *Branch*, 695 S.W.3d at 587 (quoting same).

If the plaintiff raises a fact issue concerning the applicability of an immunity waiver, then the trial court must deny the summary judgment motion. *Powell*, 704

S.W.3d at 448. But the court must grant the motion if no fact issue exists on the jurisdictional question. *Id.*

## B.  Governmental Immunity and the Texas Tort Claims Act

As political subdivisions of the State, cities are "immune from suit unless [their] immunity is waived by state law." *Id.* (quoting *Maspero*, 640 S.W.3d at 528). The TTCA provides a limited waiver of governmental immunity. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 871 (Tex. 2023); TEX. CIV. PRAC. & REM. CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Relevant here, TTCA section 101.021(1) waives immunity for the negligent use or operation of a motor vehicle:

> A governmental unit in the state is liable for:
>
> (1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle . . . ; and
> >
> > (B)  the employee would be personally liable to the claimant according to Texas law[.]

TEX. CIV. PRAC. & REM. CODE § 101.021(1). But the TTCA also "withdraws" the waiver in several circumstances. *Powell*, 704 S.W.3d at 448–49 (quoting *Rattray*, 662 S.W.3d at 866). We discuss in further detail below the waiver of immunity in section 101.021(1) and the emergency exception in section 101.055(2), which withdraws the immunity waiver.

10

## C.    Appellate Jurisdiction

We begin by briefly addressing a jurisdictional issue raised by Moran. She asserts that this Court may only consider the emergency exception issue because that "is the only issue that challenges the trial court's subject-matter jurisdiction." She further asserts that an interlocutory order denying a summary judgment motion is not immediately appealable under Civil Practice and Remedies Code section 51.014. We disagree with both arguments.

Section 51.014(a)(8) authorizes a party to appeal an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8); *see also id.* § 101.001(3)(B) (defining "governmental unit" to include "any city"). The Texas Supreme Court has construed this subsection as authorizing an interlocutory appeal when "the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise." *Town of Shady Shores*, 590 S.W.3d at 549 (quoting *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). Moreover, the court has applied section 51.014(a)(8) to find appellate jurisdiction over a trial court's interlocutory order denying a city's summary judgment motion that raises both official immunity and the emergency exception as grounds for governmental immunity. *Rodriguez*, 704 S.W.3d at 467 & n.5.

Accordingly, we disagree with Moran that our appellate jurisdiction extends only to the emergency exception issue. We further disagree that an interlocutory order denying a governmental unit's summary judgment motion based on an assertion of immunity is not immediately appealable. We therefore hold that we have appellate jurisdiction to consider both appellate issues raised by the City.

## D. Emergency Exception

In its first issue, the City asserts that Moran did not present evidence raising a fact issue regarding the applicability of the emergency exception, and therefore the trial court erred by denying summary judgment on this ground.

The emergency exception provides:

This chapter does not apply to a claim arising:

\* \* \* \*

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

TEX. CIV. PRAC. & REM. CODE § 101.055(2). The emergency exception presupposes that another section of the TTCA waives immunity, and the emergency exception "withdraws" such waiver. *Powell*, 704 S.W.3d at 448–49 (quoting *Rattray*, 662 S.W.3d at 866 (discussing emergency exception as one provision that withdraws TTCA's waiver of immunity)).

12

The emergency exception "contemplates two distinct inquiries to be undertaken in a particular order." *Id.* at 449. A court must first determine whether any laws or ordinances apply to the emergency action at issue in the case. *Id.* If a law or ordinance applies wholly or partly to the emergency action at issue, then "the jurisdictional inquiry turns on whether the officer's action complied with the relevant law or ordinance." *Id.* The court considers only laws applicable to emergency action. *Id.* at 451 ("[G]enerally applicable rules of the road that do not specifically address or reference emergencies are not applicable to emergency action for purposes of the emergency exception."). If no law or ordinance applies to any part of the emergency action, then the court must consider whether the officer acted with conscious indifference or reckless disregard for the safety of others. *Id.* at 449 (stating that whether officer acted with conscious indifference or reckless disregard "is triggered only if no law or ordinance governs the emergency action at issue or any part of it").[3]

To resolve this issue in this case, we need only consider the first inquiry: whether Officer Scott complied with the laws and ordinances applicable to emergency action. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); *Powell*, 704

---

[3]     As the City argues, the emergency exception further "requires a causal nexus between the plaintiff's claim and the government employee's reckless or illegal action." *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 531 (Tex. 2022) (citing TEX. CIV. PRAC. & REM. CODE § 101.055(2)). Consideration of this element is not necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

S.W.3d at 449. The parties do not dispute that Transportation Code Chapter 546 applies to emergency action. *See Powell*, 704 S.W.3d at 452 (stating that Chapter 546 "is a *specific* body of rules and regulations that govern the operation of emergency vehicles").

The City argues that Scott complied with two subsections of Transportation Code section 546.001: Scott slowed down and looked both ways before driving into the intersection so as not to endanger life or property as required by subsection (3), and he slowed as necessary for safe operation before running the red light as required by subsection (2). To support these arguments, the City relies solely on Scott's declaration and the affidavits of the four other officers involved in the pursuit of the robbery suspect. The City further argues that Moran did not present any evidence raising a fact issue. We disagree.

Section 546.001 provides that an operator of an authorized emergency vehicle may:

> (1) park or stand, irrespective of another provision of this subtitle;
>
> (2) proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation;
>
> (3) exceed a maximum speed limit, [with an exception not relevant here], as long as the operator does not endanger life or property; and
>
> (4) disregard a regulation governing the direction of movement or turning in specified directions.

TEX. TRANSP. CODE § 546.001.

As the City correctly notes, the officers' declaration and affidavits all stated that before proceeding through the intersection at the red light, Scott slowed down, looked both ways for traffic, and saw that traffic was stopped, including Moran's vehicle which stopped after briefly driving forward.[4] However, the City does not address other summary judgment evidence relevant to whether Scott complied with section 546.001. Specifically, the crash report and a letter from HPD suspending Scott after the collision both raise fact issues about whether Scott violated section 546.001.

In the crash report, the investigating officer concluded that Scott "failed to use due caution and struck" Moran's vehicle. The investigating officer reported that he had reviewed a recording from Scott's body camera, which "showed Officer [Scott] did not slow down and clear the intersection." This evidence raises a fact issue about whether Scott slowed down, looked both ways, and ensured the intersection was clear of traffic before he ran the red light and drove through the intersection. The City attached the crash report to its summary judgment motion, but the City does not address the quoted language from the report or argue that the report does not raise a fact issue on Scott's compliance with section 546.001.

---

[4]     The four officers—who were driving in separate vehicles behind Scott's vehicle—relied on Scott's statements about his actions.

As the traditional summary judgment movant, the City bore the initial burden to establish that no fact issues existed on its entitlement to immunity. *See* TEX. R. CIV. P. 166a(c); *Powell*, 704 S.W.3d at 448. The City's own evidence, however, raises fact issues about whether Scott slowed as necessary before running the red light as required by section 546.001 and thus whether the emergency exception applied. *See* TEX. TRANSP. CODE § 546.001(2). The burden therefore did not shift to Moran to produce evidence raising a fact issue on the emergency exception. *See Powell*, 704 S.W.3d at 448; *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 637 (stating that to establish jurisdiction, plaintiff "will only be required to submit evidence if the defendant presents evidence negating one of those basic facts" comprising plaintiff's action).

Nevertheless, Moran's response attached a letter from the HPD police chief temporarily suspending Scott for his conduct during the chase that resulted in the collision with Moran's vehicle. The letter primarily stated that Scott "failed to comply with Houston Police Department rules and regulations regarding TRAFFIC LAWS."[5] But the letter also concluded that Scott "violated" subsections (2) and (4) of section 546.001, which we quoted above, as well as section 546.005(1). *See* TEX.

---

[5] Generally, violations of police department policies are not violations of "the laws and ordinances applicable to emergency action" for purposes of the emergency exception. *See Maspero*, 640 S.W.3d at 530 (stating that "a police department's internal policies, in and of themselves, are not 'laws' or 'ordinances'" within meaning of emergency exception).

TRANSP. CODE § 546.005(1) ("This chapter does not relieve the operator of an authorized emergency vehicle from . . . the duty to operate the vehicle with appropriate regard for the safety of all persons[.]").

Although Moran relied on this letter and the crash report to raise a fact issue concerning the emergency exception, the City does not address either document. Instead, the City contends that Moran "failed to provide any evidence in support of her argument against the Emergency Exception, and so it failed." Not so. The crash report and the HPD letter both raise fact issues about whether Scott complied with Transportation Code sections 546.001 and 546.005.

Accordingly, we conclude that the City did not meet its summary judgment burden to show that no genuine issue of material fact existed concerning the applicability of the emergency exception and that it was entitled to judgment as a matter of law.[6] We therefore hold that the trial court did not err by denying summary judgment on this ground.

We overrule the City's first issue.

---

[6]     Based on this conclusion, we do not consider the City's remaining arguments concerning the emergency exception. *See* TEX. R. APP. P. 47.1.

17

## E.     Official Immunity

In its second issue, the City contends that Moran did not raise a fact issue on whether Officer Scott is entitled to official immunity, which the City can rely on to assert governmental immunity.

Official immunity is an affirmative defense that shields governmental employees from personal liability; it is not the governmental employer's defense. *Rodriguez*, 704 S.W.3d at 468; *see City of Houston v. Sauls*, 690 S.W.3d 60, 69 (Tex. 2024) ("Official immunity shields government employees from liability in civil lawsuits that, with the benefit of hindsight, would second-guess their performance of discretionary duties and force them to defend decisions that were reasonable when made."). However, section 101.021(1) conditions the employer's waiver of immunity in part on whether "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(B). The supreme court has interpreted this subsection to mean "that the governmental employer's immunity is not waived if its employee is protected by official immunity." *Rodriguez*, 704 S.W.3d at 468 & n.22 (collecting cases).

Because official immunity is an affirmative defense that must be pleaded and proved, "a governmental employer bears the burden to assert and prove its employee's official immunity, in a manner analogous to an affirmative defense, to preclude enforcement of the [TTCA's] waiver of governmental immunity on that

ground." *Id.* at 469; *see also Nicolai*, 695 S.W.3d at 494 (stating that defendant moving for summary judgment on affirmative defense must conclusively establish each element of defense). This is true even though the plaintiff generally bears the burden of affirmatively showing that the governmental employer's immunity is waived. *Rodriguez*, 704 S.W.3d at 469 & n.26 (stating that plaintiff could meet its burden of affirmatively showing waiver of governmental immunity, including that employee would be personally liable, without affirmatively negating official immunity) (quotation omitted).

"'[P]erhaps most vital in police work,' official immunity protects officers 'when they are performing (1) discretionary duties, (2) in good faith, and (3) within the scope of their authority.'" *Id.* at 468 (quoting *Sauls*, 690 S.W.3d at 69–70).

Here, the parties primarily focus their arguments on the good-faith element. In an emergency response case, a police officer acts in good faith when "a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the *need* to immediately apprehend the suspect" or respond to an emergency "outweighed a clear *risk* of harm to the public in continuing the pursuit" or response. *Id.* at 472 (quoting *Sauls*, 690 S.W.3d at 72–73). The good-faith test is "one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith." *Sauls*, 690 S.W.3d at 73 (quotation

omitted). The standard protects "all but the plainly incompetent." *Id.* at 75 (quotation omitted).

In determining whether an officer acted in good faith, we balance the need for immediate police intervention against the risk inherent in countervailing public-safety concerns. *Rodriguez*, 704 S.W.3d at 472. Assessing the need for immediate police intervention considers the following factors: (1) the seriousness of the crime to which the officer is responding; (2) the need for the officer's immediate presence to prevent injury or loss of life or to apprehend a suspect; and (3) the availability of any alternative courses of action to achieve a comparable result. *Id.*

In assessing the risk to public safety, we consider: (1) the nature and severity of harm that the officer's actions could cause, including injuries to bystanders as well as the possibility that a vehicle accident might prevent the officer from reaching the scene of the emergency that drew the action; (2) the likelihood that harm would occur; and (3) whether any risk of harm would be clear to a reasonably prudent officer based on the officer's perception of the facts at the time. *Id.*; *Sauls*, 690 S.W.3d at 73 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)).

To be entitled to summary judgment, the governmental unit's evidence "must sufficiently assess particularized need-risk factors with reference to specific facts" and show that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately respond to the emergency

20

outweighed a clear risk of harm to the public. *Rodriguez*, 704 S.W.3d at 472. Magic words are not required to satisfy this test, and the test is not onerous. *Id.* "The focus is 'on the objective facts and information the officer knew and perceived, not on whether the officer had subjectively considered and assessed certain factors.'" *Id.* (quoting *Sauls*, 690 S.W.3d at 74–75).

If the governmental unit meets its burden to conclusively establish official immunity, the burden shifts to the nonmovant to meet an "elevated standard of proof" by showing that no reasonably prudent officer "in the defendant's position could have thought the facts were such that they justified defendant's acts." *Sauls*, 690 S.W.3d at 75–76 (quotation omitted).

Here, we agree with the City that there was a significant need for immediate police intervention. The robbery suspect had reportedly committed a serious criminal offense by stealing a car at gunpoint, assaulting the owner of the car, and eventually leading police on a chase through city streets. At the time of the chase, police officers had only a general description of the suspect, and the stolen vehicle did not have license plates. Once the chase ensued, apprehension of the suspect largely depended on the officers not losing sight of the stolen vehicle in which the suspect attempted to evade capture.[7]

---

[7]    Neither party contends that an available alternative course of action included arresting the robbery suspect at the parole office before the chase ensued. *See City of Houston v. Rodriguez*, 704 S.W.3d 462, 472 (Tex. 2024) (stating that one factor

However, we disagree with the City's analysis of the factors for assessing the risk to public safety, as well as its ultimate conclusion that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. Here again, the City relies solely on the officers' statements without addressing other summary judgment evidence. But as with the emergency exception, the crash report and the HPD letter raise fact issues that undermine the premise of the officers' conclusions, specifically that Officer Scott acted as a reasonably prudent officer by slowing down and checking for traffic before he ran the red light and drove through the intersection.

For example, Scott's declaration included the following relevant language:

9.  I was following behind the unknown suspect in the stolen vehicle . . . . I observed the suspect in the far-right lane and believed he was going to turn right because there is an apartment complex close by on East Crosstimbers where other suspects have run [to] avoid apprehension. I slowed down dramatically because I believed he was going to make that right turn. Then, [I] saw him run the red traffic light at East Crosstimbers and reported it to dispatch. . . .

10. As I was braking heavily, I checked the westbound lanes for traffic on East Crosstimbers and saw that all vehicles were stopped. Before the unknown suspect drove through the intersection at the red light, I observed the eastbound traffic and saw a black Chevrolet pickup truck [driven by Moran] in the far-left lane move forward and then stop as the stolen vehicle went

---

in assessing need for immediate police intervention is availability of any alternative courses of action to achieve comparable result).

22

through the intersection. It appeared as if the black pickup drove forward and due to the immediate stop, the truck's brakes locked up. Then I saw her pull forward again and stop again. The pickup truck's action of stopping again made me believe the black pickup was yielding to my emergency vehicle. I continued to observe that all other traffic was stopped.

11. Based on what I observed, I then proceeded toward the East Crosstimbers intersection accelerating when suddenly and unexpectedly I saw the black pickup pull forward into the intersection right in front of me. I immediately attempted to reduce my speed and drove toward the left to avoid the black pickup. Unfortunately, the black pickup continued forward despite my emergency lights and siren on steady which would have been getting louder as I approached the black pickup truck. I further veered my emergency vehicle to the left to avoid hitting the black pickup truck cab at the driver's door. . . .

12. My HPD emergency vehicle's front right struck the driver's front quarter panel. After impact, my vehicle spun counterclockwise and the rear quarter panels struck each other. . . .

* * * *

25. Immediately prior to the accident, I watched the stolen vehicle on the other side of the intersection gaining distance, because I had slowed for the intersection and now was accelerating after I saw the stopped black pickup move forward and stop again for me. . . .

* * * *

31. A reasonably prudent Texas Peace Officer including myself could have believed the need to apprehend the unknown suspect in the stolen vehicle outweighed the risk of the emergency vehicle with activated lights and siren being followed by two other emergency vehicles with activated lights and sirens on steady on Eastex Freeway service road slowing down, checking for traffic and proceeding, seeing traffic yielding to the emergency vehicle though the yielding vehicles had a green light. A reasonably prudent officer including myself could have believed that drivers on the roadway who are paying attention to

traffic patterns and watching for emergency vehicles would have reasonably slowed down and even stopped and continued to remain stopped in response to the multiple activated emergency vehicles' emergency lights and sirens on steady.

32. My field training requires that when I am pursuing an evading suspect, I am required to activate my body worn camera, activate my emergency patrol vehicle overhead strobes and grill light flashers and siren on steady and then proceed in the pursuit. . . . I am trained to slow down at intersections to confirm whether traffic is present and whether drivers are yielding to my emergency vehicle.

\* \* \* \*

35. In my opinion, based on all the facts stated above, another reasonably prudent Texas Peace Officer including myself, under the same or similar circumstances, could have believed that the need to keep in view and follow the unknown suspect in the stolen vehicle outweighed any minimal risk of harm to others and that all my decisions and actions before the accident were justified and reasonable based on my perception of the facts at the time. . . . I took precautions to avoid any such risk by activating my vehicle's emergency lights and siren on steady and being in tandem with . . . other emergency unit[s] with activated emergency lights and sirens on steady . . . . I significantly reduced my emergency vehicle's speed as I neared the intersection, looked both ways for traffic and saw the black pick up go forward and stop for the stolen vehicle, and move forward and stop again right thereafter as we were traveling toward the intersection following the stolen vehicle. . . .

Officer Scott's opinions about what a reasonably prudent officer could have believed under the same or similar circumstances are premised on the facts that before Scott ran the red light in pursuit of the stolen vehicle, he slowed down, looked both ways for traffic, and determined that the intersection was clear of traffic. The other officers similarly stated (nearly verbatim) that Scott acted as a reasonably

24

prudent officer based on Scott's statement that he slowed down, looked both ways, and determined that the intersection was clear of traffic before driving through the red light.

But as discussed above, fact issues exist on whether Scott slowed down and checked for traffic before driving through the red light. The crash report concluded that Scott "failed to use due caution and struck [Moran's vehicle]." This conclusion was based on the investigating officer's review of Scott's body camera, which "showed Officer [Scott] did not slow down and clear the intersection." Furthermore, in a letter from the HPD police chief, HPD suspended Scott for three days based in part on HPD's conclusion that Scott violated three provisions of the Transportation Code: (1) he did not proceed through the red light "after slowing as necessary for safe operation"; (2) he "disregard[ed] a regulation governing the direction of movement or turning in specified directions"; and (3) he did not comply with "the duty to operate the vehicle with appropriate regard for the safety of all persons." *See* TEX. TRANSP. CODE §§ 546.001(2), (4), 546.005(1).

This evidence raises fact issues on the central premise of Scott's and the other officers' opinions about a reasonably prudent officer's beliefs when acting under the same or similar circumstances. *See Rodriguez*, 704 S.W.3d at 472. That is, the officers' opinions that Scott acted as a reasonably prudent officer are belied by fact issues about Scott's actions. The officers said nothing about whether Scott's actions

25

would have been reasonable even if he did not slow down, look both ways for traffic, and ensure the intersection was clear of traffic before running the red light. *See Powell*, 704 S.W.3d at 448 (stating that in reviewing summary judgment ruling, court takes as true all evidence favorable to nonmovant and indulges every reasonable inference and resolves any doubts in nonmovant's favor). The City does not address the crash report or the HPD letter on appeal, even though Moran primarily relied on these documents to raise fact issues.

We conclude that the City did not conclusively establish that Officer Scott acted in good faith as required for official immunity.[8] We therefore hold that the trial court did not err by denying summary judgment based on this ground.

We overrule the City's second issue.

## Conclusion

We affirm the trial court's order denying summary judgment.

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

---

[8] Based on this conclusion, we do not consider the City's remaining arguments concerning official immunity. *See* TEX. R. APP. P. 47.1.